IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
JAN - 4 2019
U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

| | |
|---|---|
| REXEL USA, INC d/b/a GEXPRO, | ) |
| *Plaintiff,* | ) |
| v. | ) Case No. |
| RICHARD BRAGG and | ) 1:19-cv-00035-JPH-DML |
| CITY ELECTRIC SUPPLY COMPANY, | ) |
| *Defendant.* | ) |

**COMPLAINT FOR**
**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Rexel USA, Inc. d/b/a Gexpro ("Gexpro") hereby files its Complaint against Defendants Richard Bragg ("Bragg") and City Electric Supply Company ("City Electric") and asserts causes of action for (1) breach of employee's duty of loyalty; (2) violation of the Federal Computer Fraud and Abuse Act; (3) conversion; (4) violation of the U.S. Defend Trade Secrets Act; (5) violation of Indiana's Uniform Trade Secrets Act; (6) breach of contract; and (7) tortious interference with contract and business relations. Gexpro seeks damages and injunctive relief to stop and prevent Defendants' unfair competition, use and disclosure of Gexpro's confidential information, and further solicitation of its customers.

**SUMMARY OF THE CASE**

1. Defendant Bragg was an outside sales representative for Gexpro until his abrupt departure on October 11, 2018. However, before he left Gexpro, aided by Gexpro competitor City Electric Supply Company, he violated his duty of loyalty to his employer by soliciting his

1

employer's customers to leave with him. In addition to this wrongful conduct, on information and belief, Bragg took Gexpro's proprietary and confidential information from a Gexpro-owned cell phone and laptop. Bragg then destroyed Gexpro's copy of this proprietary and confidential information by deleting such information from the devices. With this competitive disadvantaged now established, Bragg continued to solicit Gexpro's customers.

2. Gexpro brings this action for injunctive relief to stop Bragg and City Electric from wrongfully using and disclosing Gexpro's confidential information and stealing its customers. Gexpro also seeks damages resulting from Defendants' unlawful conduct. Due to Defendants' conspiracy, all Defendants are jointly and severally liable.

## THE PARTIES

3. Rexel USA, Inc. d/b/a Gexpro ("Gexpro") is a corporation organized under the laws of the state of Delaware, is authorized to transact business within the state of Indiana, and has its principal place of business in Dallas, Texas.

4. City Electric Supply Company ("City Electric") is a corporation organized under the laws of the state of Florida, is authorized to transact business within the state of Indiana, and which has its principal place of business in Dallas, Texas.

5. Richard Bragg is a citizen of the state of Indiana, domiciled at 14692 E. State Road 28, Tipton, Tipton County, Indiana 46072-8894.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. § 1331.

7. This Court further has jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship and Gexpro's losses as a result of Defendants' unlawful actions, while impossible to calculate with precision, exceed $75,000.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## BACKGROUND AND COMMON ALLEGATIONS

9. Gexpro is a distributor of electrical parts and components for construction, industrial, and energy solutions markets.

10. Gexpro supplies a wide range of electrical supplies and productivity solutions for electricians, contractors, and industrial plants.

11. Gexpro carries such products as lighting components, motors, circuit breakers, and tools as well as electrical wiring, conduit, automation solutions, and solar panels, among other products.

12. Gexpro has eighty warehouse storefronts in the United States, including four in the state of Indiana.

13. On or about October 13, 2014, Bragg started working at Gexpro as an outside sales representative. In addition to selling products to existing customers, Bragg was tasked with identifying and developing prospective customers.

14. During his employment with Gexpro, Bragg acquired confidential and proprietary information from Gexpro, including, but not limited to cost, pricing, sales, and profit margin information; customer and prospect lists and preferences; and special pricing information for particular customers and prospects.

15. Bragg was heavily involved in many aspects of Gexpro's interaction with its customers. Through that frequent and regular contact with Gexpro's customers, Bragg developed relationships with the key personnel and decision-makers at those customer locations.

16. Gexpro issued Bragg a Gexpro-owned cell phone and laptop for use for company business.

17. Because of Bragg's access to Gexpro's confidential information and close contact with its customers and prospects, Gexpro protected its interests by requiring Bragg to agree to certain restrictions on his post-employment activities, including restrictions on the use of its Confidential Information, and on competing with and soliciting its customers.

18. On October 6, 2014, Bragg entered into an "Employee Confidentiality and Nonsolicitation Agreement" with Gexpro ("the Agreement"), which is attached as Exhibit A.

19. In the Agreement, Bragg agreed (i) to use Confidential Information only for the purposes of providing services to the Company; (ii) not to disclose to any third party Confidential Information without the Company's prior written approval; and (iii) not to allow any third party access to Confidential Information.

20. Bragg explicitly agreed that these obligations "shall survive any termination of my employment whether voluntary or involuntary."

21. In the Agreement, he also agreed not to solicit Gexpro's customers for one year:

> I agree that during my employment with the Company and during a period of one year following the termination of my employment with the Company for any reason that I will not, on behalf of myself or any employer, call upon, contact or solicit, directly or indirectly, any customer, including any actively sought prospective customer, of the Company (i) with whom I had material contact while employed by the Company or any of its Affiliates, (ii) whose contacts with the Company were supervised by me or (iii) about whom I acquired Confidential Information during my last twelve months of employment with the Company, for the purpose of providing products or services that are competitive with those offered by the Company. I also agree not to solicit or divert, or attempt to solicit or divert, either directly or indirectly, any business of the Company to any competitor. I agree and represent that the enforcement of the restrictions contained in this paragraph are reasonable and not unduly burdensome to me. I also agree that the restrictions contained in this paragraph are necessary and appropriate as a means to avoid the inevitable disclosure of Confidential Information should I provide products or services that are competitive with those offered by the Company.

22. During the course of his employment, Bragg stored Gexpro proprietary and confidential information, including but not limited to customer and prospective customer information, on the Gexpro-owned cell phone and laptop.

23. Weeks before Bragg's abrupt departure, he solicited Gexpro customers and prospective customers with whom he had contact, whose contacts with Gexpro he supervised and about whom he acquired confidential information over his last twelve months with Gexpro to join him at City Electric.

24. In addition, City Electric, on behalf of Bragg, and prior to Bragg's resignation, expressly solicited Gexpro's customers with whom Bragg had contact, whose contacts with Gexpro he supervised and about whom he acquired confidential information over his last twelve months with Gexpro to transfer their business to City Electric.

25. City Electric began telling the above customers, before Bragg had even tendered his resignation to Gexpro, that Bragg would continue servicing their accounts for City Electric once he joined the Company.

26. On October 11, 2018, Bragg resigned his position at Gexpro.

27. Upon leaving Gexpro, Bragg joined Gexpro's direct competitor – City Electric – in a substantially similar role to that he had held with Gexpro.

28. Before and after leaving Gexpro, Bragg has solicited Gexpro's customers, in direct violation of the Agreement and common and statutory law.

29. Bragg copied or transferred Gexpro's proprietary and confidential information from the Gexpro-owned cell phone and laptop.

30. Bragg retained a copy of this proprietary and confidential information.

31. Bragg deleted confidential, proprietary information from his Gexpro cell phone and laptop.

32. Bragg returned his Gexpro-owned cell phone and laptop.

33. Bragg's act of wiping or causing to be wiped the Gexpro-owned cell phone and laptop was not authorized.

34. The act of wiping these devices far exceeded any authority, right, or license Bragg had with respect to these devices.

35. Bragg destroyed Gexpro proprietary and confidential information contained on these devices.

36. Bragg has used Gexpro's proprietary and confidential information in his role at City Electric.

37. City Electric is aware of Bragg's use of Gexpro's proprietary and confidential information and has encouraged Bragg's use of Gexpro's proprietary and confidential information.

38. Since on or after October 11, 2018, Bragg has telephoned and visited Gexpro's customers to further solicit them to join him at City Electric.

39. Upon learning of Bragg's position with its competitor, on October 12, 2018, counsel for Gexpro sent correspondence to Bragg and City Electric expressly informing them that Bragg had restrictive covenants barring him from soliciting Gexpro's customers, attaching the Agreement, and demanding City Electric cease and desist from aiding and abetting Bragg in violating the Agreement, or risk legal action.

40. Neither Bragg nor City Electric responded to this first letter.

41. Receiving no response, on October 17, 2018, counsel for Gexpro, again, sent correspondence to Bragg and City Electric expressly informing them that Bragg had restrictive covenants barring him from soliciting Gexpro's customers.

42. The October 17, 2018, letter further disclosed that Gexpro had learned that Bragg had, in fact, violated the Agreement on behalf of and for the benefit of City Electric.

43. The letter sought assurance from Bragg that he would cease and desist this conduct and bring his actions in conformity with the Agreement.

44. Neither Bragg nor City Electric responded to this second letter.

45. On November 16, 2018, counsel for Gexpro, yet again, sent correspondence to Bragg and City Electric further outlining his offending conduct.

46. The November 16, 2018 letter, again, sought assurance from Bragg that he would cease and desist his offending conduct.

47. This letter further outlined the legal claims and liability that both Bragg and City Electric were exposing themselves to under their current course of conduct.

48. This letter, too, sought assurances from Bragg and City Electric that they would cease and desist their offending conduct.

49. Neither Bragg nor City Electric responded to this third letter.

50. Bragg's access to, knowledge of, and use of Gexpro's proprietary and/or confidential information it developed and created has allowed Bragg and City Electric to directly compete with Gexpro and solicit and steal business from Gexpro by servicing and soliciting the same customers that Bragg solicited and serviced on behalf of Gexpro. Among other things, Bragg had access to and knowledge of Gexpro's customer-specific cost, pricing, and profit margin information and other specific terms and data, which allowed City Electric to

undercut the pricing and other terms Gexpro offered in an effort to induce Gexpro's customers to move their business to City Electric.

## COUNT I
### Breach of Duty of Loyalty

51. Gexpro realleges the allegations in the preceding paragraphs.

52. In Indiana, employees owe their employers a fiduciary duty of loyalty. *Kopka, Landau & Pinkus v. Hansen*, 874 N.E.2d 1065, 1070 (Ind. Ct. App. 2007).

53. "An employee who plans to leave his current job and go into competition with his current employer must . . . refrain from actively and directly competing with his employer for customers . . . and must continue to exert his best efforts on behalf of his employer." *Id.*

54. Bragg's actions, as described above, have breached this duty.

55. Bragg's breach of his fiduciary duty has harmed Gexpro.

56. As a direct and proximate result of Bragg's conduct, Gexpro sustained and will continue to sustain actual and/or consequential damages in an amount to be determined at trial.

## COUNT II
### Violation of Federal Computer Fraud and Abuse Act
### (18 U.S.C. § 1030(a)(4))

57. Gexpro realleges the allegations in the preceding paragraphs.

58. The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq., permits any person who suffers damage or loss by reason of the criminal activity prohibited by this federal criminal statute to bring a civil action for compensatory damages and injunctive relief.

59. From approximately August through October 2018, Bragg, knowingly and with intent to defraud, accessed a protected computer and cellular smart phone without authorization, or exceeding authorization, to wit, accessing a computer and cellular smart phone owned by Gexpro, and by means of such conduct furthered the intended fraud and obtained things of value, to wit, the misappropriation of Gexpro's proprietary and confidential information belonging to Gexpro.

60. As a result of the acts alleged herein, Gexpro has been injured in an amount to be determined at trial. Gexpro also seeks injunctive relief to protect its proprietary and confidential information, its goodwill, and other legitimate business interest.

## COUNT III
### Violation of Federal Computer Fraud and Abuse Act
### (18 U.S.C. § 1030(a)(5))

61. Gexpro realleges the allegations in the preceding paragraphs.

62. In or about August through October 2018, Bragg, on behalf of the defendant City Electric, knowingly and intentionally accessed a protected computer and cellular smart phone without authorization, and as a result of such conduct, caused damage without authorization to a protected computer and cellular smart phone, to wit, deleted data files, including customer contact information, from a Gexpro computer and cellular smart phone in violation of federal criminal law, 18 U.S.C. § 1030(a)(5)(A).

63. Bragg intended to damage the computer and cellular smart phone data; in the alternative, he acted recklessly in causing such damage.

64. As a result of the acts alleged herein, Gexpro has been injured in an amount to be determined at trial. Gexpro also seeks injunctive relief to protect its proprietary and confidential information, its goodwill, and other legitimate business interest.

## COUNT IV
### Conversion

65. Gexpro realleges the allegations in the preceding paragraphs.

66. During Bragg's employment with Gexpro, Gexpro provided Bragg access to and use of its proprietary and confidential information.

67. After Bragg's abrupt resignation, he exercised unauthorized dominion and control over Gexpro's proprietary and confidential information.

68. Bragg and City Electric have retained Gexpro's property notwithstanding several demands for its return.

69. In doing so, Bragg and City Electric have seriously and wrongfully interfered with Gexpro's ownership and rights of possession in its property.

70. As a direct and proximate result of Bragg and City Electric's conduct, Gexpro has sustained and will continue to sustain actual and/or consequential damages in an amount to be determined at trial.

71. Defendants have acted willfully and/or with malice in refusing to return Gexpro's confidential customer lists and pricing information in a wanton disregard of the rights of Gexpro, entitling Gexpro to an award of punitive damages, jointly and severally against all Defendants due to civil conspiracy. Further, Plaintiff is entitled to damages pursuant to Indiana Code § 34-24-3-1, including but not limited to treble damages and attorney fees.

## COUNT V
### Violation of U.S. Defend Trade Secrets Act
### (18 U.S.C. § 1836, et seq.)

72. Gexpro realleges the allegations in the preceding paragraphs.

73. At all times, Gexpro has taken reasonable measures to protect the confidential nature of its information, which constitutes trade secrets under Defend Trade Secrets Act ("DTSA") because Plaintiff "has taken reasonable measures to keep such information secret," for example, by requiring Bragg to execute a Confidentiality and Nonsolicitation Agreement.

74. Gexpro's cost, pricing, sales, and customer and prospect information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]" 18 U.S.C. § 1839(3)(A)-(B).

75. Plaintiff's trade secrets relate to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b)(1).

76. Bragg and City Electric have misappropriated Gexpro's trade secrets by, inter alia, providing them to and/or using them on behalf of Gexpro's direct competitor, City Electric.

77. Bragg and City Electric's misappropriation of Gexpro's trade secrets has been willful and malicious.

78. As a result of the acts alleged herein, Gexpro has been injured in an amount to be determined at trial. Gexpro also seeks injunctive relief to protect its proprietary and confidential information, its goodwill, and other legitimate business interest.

## COUNT VI
## Violation of Indiana's Uniform Trade Secrets Act
## (Ind. Code §§ 24-2-3-1 et seq.)

79. Gexpro realleges the allegations in the preceding paragraphs.

80. Gexpro's proprietary and/or confidential information are trade secrets.

81. Bragg and City Electric have misappropriated and used Gexpro's trade secrets in violation of the Indiana Uniform Trade Secrets Act.

82. As a direct and proximate result of this violation of the Indiana Uniform Trade Secrets Act, Gexpro has been irreparably harmed.

83. As a direct and proximate result of Bragg and City Electric's conduct, Gexpro has sustained and will continue to sustain actual and/or consequential damages in an amount to be determined at trial. Gexpro also seeks injunctive relief to protect its proprietary and confidential information, its goodwill, and other legitimate business interest.

84. Bragg should be required to identify all Gexpro customers directly or indirectly contacted by Bragg since August 2018; business relationships or contracts of Gexpro customers replaced by Bragg or City Electric since August 2018, hold profits of any such replacement relationships or contracts in constructive trust for Gexpro; and account to Gexpro.

## COUNT VII
## Breach of Contract

85. Gexpro realleges the allegations in the preceding paragraphs.

86. The Agreement is a valid and enforceable contract.

87. Under the Agreement, Bragg is subject to valid and enforceable covenants providing that, inter alia, he will not disclose or use in any way for any purpose Gexpro's Confidential Information.

88. Likewise, Bragg was precluded from soliciting Gexpro's customers under the Agreement.

89. Gexpro has fulfilled all of its obligations under Bragg's employment agreement.

90. Bragg's actions, as set forth above, have breached the Agreement.

91. As a direct and proximate result of Bragg's conduct, Gexpro has sustained and will continue to sustain actual and/or consequential damages in an amount to be determined at trial. Gexpro also seeks injunctive relief to protect its proprietary and confidential information, its goodwill, and other legitimate business interest.

## COUNT VIII
### Tortious Interference with Contractual & Business Relations As to All Defendants

92. Gexpro realleges the allegations in the preceding paragraphs.

93. Gexpro possesses advantageous business relationships and expectancies with its current and prospective customers with whom Gexpro has an expectation of continued service.

94. Defendants have knowledge of Gexpro's contracts and advantageous business relationships with its current and prospective customers.

95. Defendants, without privilege or justification, tortiously induced, and continue to tortiously induce, Gexpro's customers to terminate and/or modify their relationship with Gexpro, with the deliberate intention of causing damage to Gexpro.

96. Defendants' acts of interference are and have been intentional, and are improper and without justification.

97. As a direct and proximate consequence of Defendants' tortious interference with Gexpro's contracts and business relations, Gexpro has been and will continue to be irreparably damaged through the loss of business, customer relations, profits and goodwill.

98. Gexpro is entitled to preliminary and permanent injunctive relief against Defendants, enjoining and restraining them from further interfering with Gexpro's business relations.

99. Gexpro is further entitled to an award of damages against Defendants to compensate Gexpro for all losses proximately caused by Defendants' conduct, jointly and severally against all Defendants due to civil conspiracy.

100. As a direct and proximate consequence of Defendants' intentional and tortious conduct, Gexpro has been damaged in an amount to be proven at trial.

101. Defendants' tortious conduct was willful, malicious, and done in conscious disregard of Gexpro's rights, entitling Gexpro to punitive damages and attorneys' fees and costs in an amount to be proven at trial, jointly and severally against all Defendants due to civil conspiracy.

### COUNT IX
### Tortious Interference With Contractual & Business Relations As to City Electric

102. Gexpro realleges the allegations in the preceding paragraphs.

103. Gexpro possessed and possesses advantageous business relationships and expectancies with certain customers with whom Gexpro had and has an expectation of continued service.

104. Prior to Defendant Bragg's resignation from Gexpro, City Electric had knowledge of Gexpro's contracts and advantageous business relationships with its customers, and further had knowledge of Gexpro's contractual relationship with Defendant Bragg, including the Agreement.

105. Despite the above knowledge, City Electric, prior to Bragg's resignation from Gexpro, took steps to solicit Gexpro's customers on Bragg's behalf.

106. City Electric, without privilege or justification, tortiously induced, and continues to tortiously induce, Gexpro's customers to terminate and/or modify their relationship with Gexpro on Bragg's behalf, with the deliberate intention of causing damage to Gexpro.

107. City Electric's acts of interference are and have been intentional, and are improper and without justification.

108. As a direct and proximate consequence of City Electric's tortious interference with Gexpro's contracts and business relations, Gexpro has been and will continue to be irreparably damaged through the loss of business, customer relations, profits and goodwill.

109. Gexpro is entitled to preliminary and permanent injunctive relief against City Electric, enjoining and restraining it from further interfering with Gexpro's business relations.

110. Gexpro is further entitled to an award of damages against City Electric to compensate Gexpro for all losses proximately caused by City Electric's conduct.

111. As a direct and proximate consequence of City Electric's intentional and tortious conduct, Gexpro has been damaged in an amount to be proven at trial.

112. City Electric's tortious conduct was willful, malicious, and done in conscious disregard of Gexpro's rights, entitling Gexpro to punitive damages and attorneys' fees and costs in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Gexpro seeks judgment in its favor and against Defendants Bragg and City Electric on all Counts and respectfully requests that the Court enter an Order granting it the following relief:

  A. Entering a preliminary and permanent injunction against Defendants, and their agents, servants, employees, and attorneys and all other persons or entities who are in active concert or participation with them, enjoining them as follows:

   (1) prohibiting them from directly or indirectly contacting or soliciting, directly or indirectly, any of Gexpro's customers, prospective customers, and customer representatives, with whom Bragg had contact, whose contacts with the Company were supervised by Bragg, or about whom Bragg learned Confidential Information during his Gexpro employment, including those customers he has already induced to move their business to City Electric or otherwise interfering with Gexpro's business relationships;

   (3) Prohibiting Defendants from using or disclosing Gexpro's Confidential Information;

   (4) Requiring the Defendants to identify and return to Gexpro any Gexpro property, including but not limited to Gexpro's confidential customer lists and pricing information, and all Gexpro Confidential Information that they have accessed, used, disclosed, or possessed in any form (paper or electronic), or that is stored on any system or electronic device belonging to any of the Defendants or any other person or entity affiliated with or acting on their behalf, either separately or together;

   (5) Requiring Defendants to provide a sworn statement identifying all Gexpro Confidential Information that they have retained, accessed, reviewed, or possess in any form; and

(6) Requiring Defendants to destroy all Gexpro Confidential Information on all computers, hard drives, electronic devices, and/or other media that contain, or have contained at any time, any Gexpro Confidential Information and certify such destruction under penalties for perjury; and

B. Awarding Gexpro such damages as may be proven at trial, jointly and severally against all Defendants due to civil conspiracy;

C. Awarding Gexpro punitive damages, jointly and severally against all Defendants due to civil conspiracy;

D. Awarding Gexpro its costs and attorneys' fees, jointly and severally against all Defendants due to civil conspiracy; and

E. Awarding Gexpro such other and further relief as the Court deems just and proper in the circumstances.

Respectfully submitted,

/s/ Robert F. Seidler

Robert F. Seidler
Caitlin S. Schroeder
Jackson Lewis P.C.
211 North Pennsylvania Street, Suite 1700
Indianapolis, Indiana 46204
Telephone: (317) 489-6930
Facsimile: (317) 489-6931
E-mail: robert.seidler@jacksonlewis.com
caitlin.schroeder@jacksonlewis.com

*Attorneys for Plaintiff*